This case is E06-1540, the plaintiff's name is Mr. Brown v. Praxair. Mr. Brown. May it please the court, there are two grounds on which the district court's summary judgment of obviousness should be validated. The first is a procedural ground, and that ground is that the district court substituted its own judgment on technical matters for that of ATMI's expert witness, who had opined not in a conclusory fashion, not in areas that are within the common understanding of the court, substituted his judgment for that of the expert's, and therefore exceeded the district court's authority on summary judgment. The second ground is a substantive ground. The substantive ground is that obviousness, of course, is an issue of law, which depends upon subsidiary fact questions. The two fact questions in particular as to which there was a genuine issue are, first, the scope and content of the prior art, and second, the differences between the prior art and the claim of invention. This is not a case, and I think it's important to note this, this is not a case where it was disputed, as many of the cases that come up to this court are. It was, this is not a case where it is undisputed, that all of the elements of the claim are in the prior art at issue. And the only question is whether there is a teaching suggestion or motivation to combine those known elements. That is not this case. There is an additional TSM question. But the first issue as to which there is a dispute is whether the prior art, in fact, that is an issue of the case, contains the claimed elements. Well, let me ask you about the prior art. Yes. You've got the French patent, and it discloses a regulator in the interior volume, except for the channel model. Precisely. And then you've got the Praxair patents that show a self-contained regulator. Precisely. Why doesn't combining the Praxair patents with French give you a regulator contained below than that, in the interior of the container? Two reasons. One is that you're not combining two disparate elements to take one together. You're taking two elements, neither of which is a regulator fully within the container. Right. You're combining the two. You need the two. But neither one is. Neither one satisfies the claim. So you're combining one structure that is not entirely within the bottle, and another structure that's not entirely within the bottle. And the combination of those two things does not produce a regulator entirely within the bottle. Why not? I mean, because the regulator, it's a self-contained regulator. I mean, the only thing that makes French go outside the bottle is this channel 9, which means that it's not a self-contained regulator. But if you come up with a self-contained regulator, why isn't it in combination with French? That's no more different in my mind, Your Honor, than asking if you move the regulator from the Praxair patents down, would it be within the bottle? It would, but it's not a question of combining in a normal sense of disparate elements. You're just saying move it. And the French patent doesn't teach having the entire thing within the bottle. And the Praxair patents do not teach that either. But they do say that the regulator will be the container valve or the container itself, within the container valve or the container itself. Why isn't that or clause sufficient to place it within the container? You are correct. It does say that. What it doesn't say is below the neck. In the container itself is an ambiguous phrase. And what's disclosed in the 895 patent, the Praxair patent, is that it is within the neck. It is not below the neck, which is what the court's claim instruction here, which is not appealed by Praxair, requires it to be. So within the container is an ambiguous phrase that may be below the neck, but may not be. But it goes on to describe the reason. It goes on to say this is a protection. It protects the regulator because it's within the body of the bottle. It does say that, but it's not below the neck as required by the court's claim instruction. It wouldn't be obvious if one is skilling the art to make that minor variation. It is certainly… More protection if you drop it just a little bit further. That was the conclusion that this report came to without the benefit of expert guidance. The expert guidance says no, that's not in fact how it worked. And I think tellingly, the deposition testimony of Mr. Martin, who was the main inventor on the 895 patent to which Jerome refers, said that he rejected the idea of having it entirely below the neck. To him it wasn't obvious that that is what you should do because, in fact, he thought it would be worse. And another praxair engineer, this is also in the record, Your Honor, at 1668 to 1669, another praxair engineer doubted whether putting it entirely within the bottle would be reliable. So the question of obviousness that Your Honor is going to, the conclusion of obviousness, is not one to which you can immediately leave, particularly in the face of so much evidence of so many people in the prior order not doing so. Not doing so and doubting whether you should. And it is our view that that is a factual question. That is a factual question that the district court was not entitled to intrude upon to substitute his decision, admittedly on something he had no background in understanding, for that of competent experts rendering non-conclusory opinions about technical matters known to those schools of thought. That is the basis for our view. Let me challenge you a bit. The Supreme Court is going to raise the standard of obviousness, allegedly, and maybe that will be your answer, but I'm kind of forcing you to avoid that simple out. The Supreme Court is going to adjust things a bit. Your adjustment would kind of clearly impact your case in a negative way. How should we take that into consideration? I was thinking we might have a decision yesterday. Yes, that would have done wonders for ruining your day, wouldn't it? Oh, it makes it more interesting. If indeed we're speculating about what they may do, if they abandon the TSM standard as a requirement, leaving it as a basis to prove obviousness, and substitute instead a Hotchkiss inventiveness or a synergism or some other test that we're speculating it might be, the odds are it's probably going to be a fairly vague test that this court will have to flesh out over a number of years. But let's assume that it is, that we, that I think the only assumption we can make is that they will abandon a requirement of TSM, leaving that as an option, and leaving us with a more amorphous test that's somewhere in the category of inventiveness. That still is a factual question. The same factual question we're identifying here about, and the same evidence would come to bear, the same relevance of the Praxair inventor saying, no, I didn't think that was the way to go, the same relevance of a Praxair engineer saying, I wasn't sure it was going to work. All of that would bear on even the Supreme Court's putative standard that we expect it may be. And those are factual questions, which we would then have to try, in my view, with a jury, as the question develops a lower standard of conduct. I do want to address, if I can, briefly, the three types of additional limitations and structures that have gotten, at least in our view, short shrift, both in this court decision and in Appleby's briefs. Those three are the phase separator, and the particulate filter, and the coaxial extension tube. These are additional structures that are not just the below-the-neck claims, which we've been talking about, the inside-the-bottle claims. So the phase separator claims 816, claims 923 and 24. All three of those require, all three claims require a phase separator, in addition to this regulator that is below-the-neck, below-the-bottom. As to this, it's also not a TSN question, because the debate in the district court and on appeal is whether a phase separator is, in fact, shown in the 895 patent. That is the only reference upon which Appleby's rely. The district court was unsure about that question. The district court's exact language was that one possible exception of what he thought it didn't disclose was the phase separator. I don't know if that means it did or didn't in the district court's mind. But when you look at what Appleby's relied on, it's a membrane. And the membrane, which is discussed in column 4, line 3, that is what they're relying upon to be the, quote, phase separator. There is no debate that the purpose of a phase separator is to prevent the flow of liquid. That is clear from the specification, not disputed, I think, here. There is also the debate that in the 895 patent, the very membrane that they relied upon as being a phase separator does not prevent the flow of liquid, but restricts and controls the flow of liquid. So it is not a phase separator within the meaning of this patent. And that claim, therefore, those three claims, there can be, in my mind, no relative, no reasonable debate that what was relied upon as disclosing it does not do so. The second set of claims is the particulate filter claim. That's 476 claim 2. This is, again, an additional limitation on top of the regulator below the net claims. It's a dependent claim. Now, this particulate filter serves the function of keeping particulates that are often present in these gases out of various parts of the equipment. Again, what's relied upon is the 895 only. But what's relied upon from the 895 patent is a disclosure of filter-like materials to serve the purpose of a flow restrictor. There is no discussion, admittedly, as the district court conceded, there is no discussion in the 895 patent of a filter material performing a particulate filter function. And, of course, you can have a filter material performing all sorts of functions. It is not disclosed as performing the particulate filter function or even disclosed as being in the right place according to the claim because the claim requires that it be between the valve head and the pressure regulator to serve the purpose of being a particulate filter. That claim also, there's no reasonable debate that what was relied upon is not disclosed. Third is the coaxial extension to the claims. That's 476 claim 17 to 19. Again, an additional limitation. What's relied upon here is the French 424 disclosure. That's in the district court opinion. The problem, of course, is that in these claims, this coaxial extension has to connect the valve and the pressure regulator. In the French 424 patent, it does not because those are, in fact, welded together. So, again, there's no argument that the disclosure, which is, in fact, what the district court held. The district court held that the French 424 disclosed it. It doesn't have, it's not in the right position. Now, with regard to the below-the-net claims, there's two other snippets upon which Appelish rely. But I think it's important to begin with the understanding that the figures and the text explaining the figures are quite clear that the regulator is not, in fact, below the net. It is in the net. And... Which patents are you talking about? 895, Pratt & Sharpe's patents. And let's begin, let me just begin, take it off the table, if I may, with the Eidsvoort patent. There is a debate raised by Appelish brief about what the district court did or did not do with Eidsvoort. And the district and Appelish, it appears, are attempting to make the argument that, although Eidsvoort admittedly only has, is partially in the net and partially below the net, that the district court changed its claim construction and found that it satisfied the limitation. I believe there is no reasonable reading of the district court's opinion that says that. The district court says Eidsvoort does not disclose a regulator below the net. And so Appelish's attempt to say, well, below the net might not only mean partially below the net, I think is contradicted by what the district court did and said. So on that issue, I think we're clear. There are only two other portions of the Krexer patents which Appelish relied upon. One is this port body construction argument. And again, the evidence there is that's not a fine term. It's not a well-known term. It's not a term of art. It does not clearly convey any particular location. Our expert made that quite clear. That's a debate about what that prior art reference teaches when they say port body. The same issue has to do, the same is true of this upstream of the container valve. That's above the net. It doesn't necessarily need to be below the net. The pocket valve is squarely at the top part of that net. It could be upstream and still be in the net. That's supposed to belong there. And given the disclosure in the figures and the text, and given the other language in the text, there simply is, in my view, no way one can reasonably construe that disclosure to say that there was an undisclosed embodiment which was entirely within the vessel, particularly in light of the inventor's deposition testimony, which said that wasn't the way he was intending to go. With that, unless the court has further questions, I'd like to reserve the remaining time for rebuttal. Mr. Schwarzen? Good morning. Thank you. Your Honor, this is a case where there's nothing to try. The patents consumed are easily understood. They're simple mechanical devices. The key priori, which is the French patent, and the craxia patents, were not before the patent office, as a practical matter. The French patent was never cited. The craxia patents were cited by ATMI after the patent was allowed. There was no prosecution with respect to them. And then ultimately, on the later two patents, there was only a double patent. Why isn't Mr. Powers right that the district court has resolved issues of fact? I think he's not right because I don't think there's any issue of fact in the sense of the word. Look at the craxia patent. He relies heavily on the fact that it says that it will be within the container body. But craxia, admittedly, is not within the container body. It is half a pound. It's in a net. There are two answers to that. One, if you go back to what Judge Price said, and what I believe, it doesn't matter, basically. That as a practical matter, if you take the craxia patent, which has everything, admittedly, but the pressure valve below the neck, and you take the French patent, which teaches that concept, it's obvious that you have a patented combination. So in that way, there is nothing to resolve. And he said that in his opinion. He said, basically, you combine those two references, and it's obvious. So to me, it's really too obvious. One, you don't need to know it. And two, he's saying that it's picking up the reference as he reads it. What about the testimony of the experts, which could be construed as evidence of teaching away from the concept of lowering the regulator below the neck? I don't see how the testimony of an expert teaches away from anything. The testimony of an expert is simply Well, they understand it to be impractical, not workable, not protective of the regulator, and so on and so forth. Why isn't that understanding an indication that the prior art taught away? Because I don't think there's any such testimony by an expert in this case. What the testimony by the experts are, and by Dr. Blue, is to try to put to it and change the meaning of the words of the patent. If you take the actual evidence you have of a French patent teaching what it did a long time ago, you have basically craxair and HTMI, almost at the same time with the same basic concept. Turns out that craxair was first, and therefore craxair becomes prior art. And the only difference between the two, if at all, is one has the regulator in the preferred embodiment in the neck, and it teaches an alternative in the body of the container. And the HTMI talks about it. Where does it teach the alternative in the body of the container? I think it teaches it in the passages that we rely on. It says... Well, it says that it's, yeah, it's in the container, but that's pretty ambiguous, isn't it? No, it says for effectiveness, the container valves or the container itself will house the regulator. The container itself will house it, and indeed, Ben, all the figures show that the regulator is partially housed therein, but lies as well within the neck. I don't think it's partially housed. The language, though, is somewhat ambiguous on that point, given what the rest of craxair teaches. And now you're asking us to resolve that ambiguity, factual ambiguity, on the record? No, I don't think it's ambiguous. I think there's no dispute that in the preferred embodiment of figure two, the regulator is in the valve assembly. It's very easy to follow through. The issue is whether or not there's an alternative embodiment to it in addition to that, and I think the patent is very clear that there's no alternative embodiment to it. You find it in a few different places. You first find it in the claims, which is something that people haven't talked about for a while. The claim talks about, claim one, a port body for communication with the outlet of a pressurized tank, defining a fluid discharge pan, a valve element fixed in or upstream of the port body. Now, that's a broader concept than simply a valve element in the port body. There's very little dispute that the port body is a combination of 55 plus these two threads. Does the port body have to lie coterminous with the neck? As I read the specification, the port body has to be seemingly engaged with the neck, and the testimony of ATMI's witness is if you screw it in. That's how he reads that, so it basically screws into the neck, which is a common-sense way of looking at this bottle, and then the claim says that it covers the... As I read, that the... It has to, can be upstream of the port body as well as fixed in it, so to me, it's clear to me that Kratzer was claiming both ways of doing it. They were claiming it, they were claiming what was inferred embodiment, and they were also claiming what was an alternative embodiment. I think that alternative embodiment is spelled out in other portions that we've looked at. It's in... On column four, when you talk about it, it talks about in or ahead of the port body of our element, so that's a disclosure in the spec that's consistent with what I just read in the claim, and it seems to me when you put those three together, it's clear that there's an alternative embodiment here contemplated by Kratzer in addition to the preferred embodiment, which is inside the valve. But isn't it appropriate in a case such as this to have expert testimony that would articulate just what you've done in terms of how one skill in the art would construe those portions of the spec and those portions of the claim? And if so, why don't we at least need to go to trial? Well, because it seems to me in simple mechanical cases, which is what this is, you don't need expert testimony to explain that. That, in the same way... Well, you won't put on... I mean, before the trial time, both sides had their experts. In both sides... Well, if there would be a trial, obviously both sides would put on experts, but it seems to me if you can't look at simple mechanical patents like this and decide whether or not that combining the two of them would give something obvious, that means you can never have summary judgment in cases like this, and that doesn't make any sense to me. It seems to me that you don't have to try every one of these cases if the technology is simple and understandable. And as I said, it seems to me in the basic point, in the basic combination, there's absolutely no dispute that if you combine the two references, there's nothing to this. I mean, what you have here is two prior art references neither cited by the office, both of which are foursquare right in the field of the patent in suit. You don't have any analogous report. You don't have anything remotely related. You have two patents right on the money. Put them together. They teach out every one of the kind elements. It seems to me that's a situation where you ought to be able to get rid of this patent, but you shouldn't have to try it. You shouldn't have to get to the question of expert testimony. Mr. Schwartz, could you respond to Mr. Power's argument at the end about the other limitation? Sure. As far as the other limitation, I think the easiest one is the coaxial one. It just seems to me the coaxial connection to the French patent is a simple mechanical device which you can import into the basically into the 895 patent. I don't see much about that. The one that I think has more substance to it is the one concerning the filter of the membrane, and I think that if you look at the 895 patent, the 895 patent teaches the use of a membrane, and basically if you go to the patent in suit, the membrane is basically a black box that says membrane, and that says it's a phase separator. If you take the 895 patent that says membrane, and basically you have the liquid and the gas flowing through it, it seems to me a membrane in both of them performs the same basic function. Basically it blocks fluid and it allows gas. So I think the basic notion of a membrane is in 895. Similarly, it seems to me that its third point relates to, I believe, other filter materials. Whereas the 895 talks about filter materials, I don't think there's anything magical about the use of those filter materials in the patent in suit, so I really don't think there's anything to the real other additional mechanical limitations. In fact, I think they're both found right in 895. Well, they're found in two of them in 895 and one of them in French, so I think that you don't really have to go any further than the patents in suit to find the little details in the claims. If you have no further questions, I think that's all I have to say. Thank you very much. Thank you, Your Honor. I'd like to address three points. The first is the argument made by counsel that the Praxair 895 patent had, quote, everything admittedly except maybe the inside of the bottle, but it does not have everything admittedly. It doesn't have a phase separator because it discloses the membrane, but not one which blocks the two of them. It doesn't have the particulate filter because although it talks about a filter being a flow restrictor, it doesn't talk about one in the right place performing the function of a particulate filter, and filters are different. They perform different functions. They're different pore sizes, et cetera. It also does not have the coaxial extension tool, so it does not have everything admittedly. I want to make that clear. The second point, though, that's perhaps more important is what I heard in the argument today is a different argument that the district court decided and a different argument that had been argued for most of the rest of this case. I heard an argument for combining various references, and that was not the decision that the district court made. The district court appeared to say that all four of these independently would cause the claims to be declared invalid based on all of these things. The court did not do any particular combinations. There was no finding about teaching suggestion motivation, and there was an extensive discussion below with regard to the TSM issue with regard to experts, and we presented expert testimony about why, with all due regard to Mr. Schwartz, it may not be a big deal to him. But the district court did find that one of skill and the art would be able to modify these, any one of these, to drop the regulator entirely into the body. And why doesn't the other prior art show that he's right? That, you know, you could drop the Fraxair regulator into the body, and the way you can tell that is, look, there's some other piece of prior art that had done that French. With respect, I don't believe that's what the district court did. I believe the district court purported to find in each of the three references, not Ives' work, that not that it could be that there would be a teaching suggestion motivation to drop the regulator. The district court appeared to find, and the district court's opinion is not entirely clear in some of these cases, but appeared to find that it did disclose so, and relied upon that as the basis for obviousness. It did not say, admittedly, 895 is not below the law. I think we're saying the same thing. He's saying that one of skill and the art reading this would find that it discloses enough that they would drop the regulator into the body. I agree with that, in case you submit it. I wonder if we could just answer that one last point. You just hold the answer. In case you submit it. All rise. The honorable court is adjourned until this afternoon at 2 o'clock p.m. Thank you.